IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WILLARD LEE CHINN                                                                                    PLAINTIFF

V.                              NO. 13-5288

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Willard Lee Chinn, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed his current applications for DIB and SSI on August 25, 2011, alleging an inability to work since January 1, 2010, due to neuropathy. (Tr. 123-126, 166, 170). An administrative hearing was held on July 30, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 33-59).

By written decision dated October 11, 2012, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - status post remote distal fibular

fracture, lower extremity neuropathy, borderline intellectual functioning, and obesity. (Tr. 17). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can push and pull foot controls occasionally with his right lower extremity; the claimant can occasionally climb ramps and stairs but can never climb ladders, ropes, and scaffolds; the claimant can occasionally balance and can frequently stoop, kneel, crouch, and crawl; the claimant must avoid even moderate exposure to hazards (i.e. dangerous moving machinery and unprotected heights); the claimant is able to perform work where interpersonal contact is incidental to the work performed; and the claimant is able to perform work where the complexity of tasks is learned and performed by rote with few variables and little judgment, and where the supervision provided is simple, direct, and concrete.

(Tr. 20). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform his past relevant work, but that there were other jobs Plaintiff would be able to perform, such as assembler (fishing reel assembler); production worker (light bulb stem mounter); and inspector/checker and sorter (nut sorter). (Tr. 26-27).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on October 22, 2013. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 13-15).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following issues in this matter: 1) The ALJ erred in finding that Plaintiff did not meet Listing 12.05C; and 2) The ALJ erred in rejecting the opinion of mental consultative examiner, Dr. Scott McCarty. (Doc. 13).

### A. Listing 12.05C:

Plaintiff argues that he meets Listing 12.05C. Said listing provides as follows:

> 12.05 *Intellectual disability*: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> . . .

-4-

"The claimant has the burden of proving that his impairment meets or equals a listing." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." Id. "To establish equivalency, a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" Carlson v. Astrue, 604 F.3d 589, 594 (8th Cir. 2010), quoting from Sullivan v. Zebley, 493 U.S. 521, 531 (1990). "[W]hen determining medical equivalency, an impairment can be considered alone or in combination with other impairments." Carlson, 604 F.3d at 595.

In this case, the ALJ considered Plaintiff's mental impairment under the requirements of listing 12.05, and addressed paragraphs A, B, and C, finding that Plaintiff did not meet the requirements of the listing. (Tr. 18-19). More specifically, with respect to 12.05C, the ALJ noted that Plaintiff's VIQ and PIQ scores were both above 60 to 70 range, as found by Dr. Scott McCarty, who administered an IQ test during his Mental Diagnostic Evaluation, dated October 6, 2011. (Tr. 19). The ALJ addressed Plaintiff's FSIQ as follows:

> However, as also discussed, there is some question as to the claimant's full scale score as Dr. McCarty reported it as both 69 and as 70. The undersigned finds that the claimant's level of adaptive functioning (i.e. he has demonstrated the ability to obtain and maintain employment, he reports that he is able to attend to and care for his own personal hygiene, care for his ailing wife, care for his pets, prepare meals, drive a vehicle, shop for necessary household items, perform household chores, pay bills, and count change); supports using the higher full scale score of 70 and thus a finding that the claimant does not meet the requirements in paragraph C. Alternatively the undersigned finds that there is not clear evidence of record of an IQ score in the required 60 through 70 range.

(Tr. 19).

The Court questions how the ALJ concluded that Plaintiff's FSIQ does not fall within the range provided in 12.05C, as it does refer to a FSIQ of 60 **through** 70 (emphasis added).

-5-

However, as noted in the introductory paragraph, "intellectual disability" refers to significantly subaverage general intellectual functioning **with deficits in adaptive functioning.** (emphasis added). The Eighth Circuit Court of Appeals has emphasized in the past that "IQ scores must be valid, that the Commissioner need not rely exclusively on IQ scores, and that the Commissioner may disregard test scores that are inconsistent with an applicant's demonstrated activities and abilities as reflected in the record as a whole." Clay v. Barnhart, 417 F.3d 922, 928 (8th Cir. 2005). In this case, the record as a whole indicates that Plaintiff does not suffer from deficits in adaptive functioning sufficient to satisfy this listing. As indicated by the ALJ, Plaintiff is able to care for his personal needs, has been able to obtain and maintain employment in the past, is able to care for his wife and pet, drive, shop for necessary household items, perform household chores, and pay bills. Accordingly, the Court believes there is substantial evidence to support the ALJ's conclusion that Plaintiff's mental impairment does not meet a listing.

### B.     RFC Determination:

Plaintiff argues that the ALJ erred in rejecting the opinion of mental consultative examiner, Dr. McCarty.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In this case, the ALJ concluded that Plaintiff would be able to perform unskilled sedentary work with certain limitations. (Tr. 20). The ALJ then carefully addressed each limitation and the basis for his conclusions. The ALJ discussed the neurological examination performed by Dr. Ahmad Al-Khatib in January of 2012, wherein Dr. Al-Khatib opined that Plaintiff would have moderate limitations in his ability to stand, walk, and carry objects. (Tr. 22). The ALJ also discussed the opinions of Plaintiff's treating physicians, noting that one of them, Dr. David Beck, opined in August of 2011 that Plaintiff could perform light level work. (Tr. 22). The ALJ also considered and addressed Plaintiff's activities as well as the Plaintiff's obesity in determining Plaintiff's RFC. (Tr. 22-23).

The ALJ further recognized that in light of Plaintiff's prior injuries and surgeries, and in consideration of Plaintiff's alleged continuing pain, he should be limited to work where he is only occasionally required to push and pull foot controls with his right lower extremity. (Tr. 23). The ALJ recognized that Plaintiff used a cane for ambulation, which is why he found Plaintiff should be limited to only occasional use of ramps and stairs and should exclude ladders, ropes, and scaffolds. (Tr. 24). In addition, the ALJ considered the fact that Plaintiff was unsteady on his feet due to pain and numbness and had previously fallen, and therefore, he excluded work involving hazards in his RFC. (Tr. 24).

The ALJ afforded substantial weight to Plaintiff's treating physicians, finding they were consistent with each other and the record as a whole. He afforded some, but not substantial weight, to Dr. McCarty's opinions. (Tr. 26). The ALJ explained the basis for this finding:

> For example, Dr. McCarty opined that the claimant would have tremendous limitations in his coping capacity for the typical mental/cognitive demands of basic work-like tasks. However, the record reflects that the claimant has demonstrated adaptive functioning above this level through his work history and asserted ability to manage his finances, care for his ailing wife, drive a vehicle, play video games, and perform general household chores. (Exhibit 6F).

(Tr. 26).

On October 7, 2011, non-examining consultant, Kevin Santulli, Ph.D., concluded that the objective findings were not consistent with marked impairments in adaptive functioning, and that Plaintiff was capable of performing unskilled work. (Tr. 386-387). In a Psychiatric Review Technique form, Dr. Santulli concluded that Plaintiff had a mild degree of limitation in activities of daily living and moderate degree of limitation in maintaining social functioning and in maintaining concentration, persistence or pace, and had no episodes of decompensation, each of extended duration. (Tr. 398). The ALJ afforded the non-examining agency consultants substantial weight. (Tr. 26).

As late as January 19, 2012, Plaintiff reported to Erica Galindo, L.C.S.W., that there had been positive changes in his life since his brother came to town, and that he had started new hobbies, started a new diet, started exercising, and stopped drinking. (Tr. 461). He also reported that he did not always take his medications as prescribed. (Tr. 461).

Based upon the foregoing, as well as the record as a whole, and Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's RFC determination and

the weight he afforded to the opinion of Dr. McCarty.

### C.    Credibility Analysis:

In this case, the ALJ found that Plaintiff's credibility was harmed because his report of the circumstances surrounding his conditions appeared to be at odds with the medical evidence of record. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ discussed the fact that Plaintiff's work history reflected work activity after the alleged onset date (although it did not constitute disqualifying substantial gainful activity), and that Plaintiff testified that he had been working on a part-time and as needed basis caring for horses, which the ALJ believed indicated that his activities had at times been somewhat greater than the Plaintiff generally reported. (Tr. 25). The ALJ also noted that there was a discrepancy regarding the onset date of Plaintiff's alleged pain, because the record reflects that in September of 2010, he indicated he was seeking treatment for high blood pressure, but had no other chronic health problems. (Tr. 22, 361). The Court also noted that during the relevant time period,

Plaintiff reported to Mercy Hospital Northwest on March 16, 2012, that he did not use alcohol. (Tr. 429). However, on December 15, 2011, Plaintiff reported increased drinking, and on December 16, 2011, when Plaintiff presented to Northwest Medical Center in Springdale, the medical record indicates that "Social history is negative for alcohol and tobacco use." (Tr. 465, 475).

Based upon the foregoing, as well as the reasons given in Defendant's well stated brief, the Court finds there is substantial evidence to support the ALJ's credibility findings.

### D.     Hypothetical Question Presented to VE:

The ALJ presented the following hypothetical questions to the VE:

> Q: Okay. Hypothetical number one, assume an individual with the same age, education, and work experience as that of the claimant, who is able to lift and/or carry ten pounds occasionally; lift and/or carry less than ten pounds frequently; stand and/or walk two hours out of an eight-hour workday with normal breaks; sit six hours out of an eight-hour workday with normal breaks. Push and pull would be limited to occasional right foot control; able to climb ramps and stairs occasionally; able to climb ladders, ropes, and scaffolds, never; able to balance occasionally; able to stoop, kneel, crouch, and crawl frequently; must avoid even moderate exposure to hazards, including machinery and heights, and the like; able to perform work where interpersonal contact is incidental to work performed. Complexity of tasks is learned and performed by rote; few variables and little judgment; and supervision required is simple, direct, and concrete. Could an individual with these limitations perform Claimant's past work as it was actually performed, or as it is customarily performed pursuant to the Dictionary of Occupational Titles?
>
> A: No, Your Honor.
>
> Q: Addendum to hypothetical number one: assume an individual with the same age, education and work experience as that of the claimant, who has the residual functional capacity that we've just described, would there be any jobs that this individual could perform that exist in the national or regional economies?
>
> A: Yes, Your Honor. There are jobs that meet that hypothetical such as an

>> assembler, in particular a fishing reel assembler. ...Also, Your Honor, there would be production worker such as a light bulb stem mounter....
>> Also, Your Honor, there would be an inspector checker and sorter. That would be, – in particular would be a nut sorter. ...

(Tr. 52-54).

The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's response to the hypothetical questions posed by the ALJ constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing the jobs of assembler, production work or inspector checker and sorter. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.   Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 30th day of March, 2015.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)